United States Courts
Southern District of Texas
FILED

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEB 2 0 2007

Michael N. Milby, Clerk

| | | |
|---|---|---|
| In re | & | |
| | & | |
| MAZADA ENTERPRISES, INC. | & | CASE NO. 06-33139-H4-11 |
| A Texas Corporation | & | |
| | & | |
| Debtor | & | |
| | & | |
| TRUSTMARK NATIONAL BANK | & | ADVERSARY NO. 07-03047 |
| | & | |
| Plaintiff | & | |
| v. | & | |
| | & | |
| LARRY CAPLAN | & | |
| | & | |
| Defendant | & | |

**DEFENDANT'S ORIGINAL ANSWER AND RESPONSE TO
PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF
AND DEFENDAT'S COUNTERCLAIM AND
DEFENDANT'S/COUNTERCLAIMANT'S REQUEST FOR PUNITIVE
AND EXEMPLARY AND/OR ALL OTHER REMEDIES AT LAW THAT
MAY BE AVAILABLE IN BOTH CIVIL AND CRIMINAL ACTIONS
THAT THE COURT MAY FIND**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, LARRY CAPLAN ("Caplan"), Defendant herein, and

pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, files this

Original Answer and Response to Plaintiff's Application for Injunctive Relief and

Defendant's Counterclaim and Defendant's/Counterclaimant's Request for Punitive and

Exemplary and/or All Other Remedies at Law that may be Available in both Civil and

Criminal Actions that the Court may find, against Plaintiff, Trustmark National Bank

("Trustmark"), and would respectfully show unto the Court the following:

1

## I.     JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. &&157 and 134. Caplan asserts that this is a core proceeding under 28 U.S.C. &157 (b)(2)(A). In the alternative, Caplan asserts the Court may hear this as a non-core proceeding under 28 U.S.C. &157(c)(1).

2. Venue is proper in this District under 28 U.S.C. & 1409(a).

## II.     PARTIES

3. Plaintiff Trustmark is a Federal Bank domiciled in the State of Mississippi. Trustmark has business operations within the boundaries of the Southern District of Texas, Houston Division and may be served through its Attorney of record Michael C. Falick. A copy of the "Original Answer and Response to Plaintiff's Application for Injunctive Relief and Defendant's Counterclaim and Defendant's/Counterclaimant's request for Punitive and Exemplary and/or all other Remedies at Law that may be available in both Civil and Criminal Actions that the Court may allow" is also being served electronically or via email or fax upon Trustmark's attorney, Mr. Michael C. Falick, 1201 Louisiana, Suite 550, Houston, Texas 77002

4.     Defendant/Counterclaimant Caplan is an individual residing at 5331 Pine Arbor Drive, Houston, Texas 77066.

## III.   FACTUAL BACKGROUND

5.     Trustmark does not come to this Court with "clean hands". At the very minimum, Trustmark is guilty of "gross incompetence" in their capacity as administrator of the loan(s) made jointly by Mazada Enterprises Inc. ("Mazada") and Derrick Enterprises, Inc. ("Derrick"). Trustmark has violated its fiduciary responsibilities and

2

duties, from which it has unjustly enriched itself with the Small Business Administration ("SBA"), an arm of

("SBA"), an arm of the Federal Government, and at the ultimate expense of the taxpayers

of the United States of America. Trustmark has failed to report a multitude of federal

violations to the proper federal authorities with conscious indifference. Although we may

not know all of the exact reasons for Trustmark harboring many actions/activities that

have severe criminal repercussions and consequences, we can entertain some of the

logical reasons.

6.     More than a year ago, these concerns have been shared with Mr.Maurice

Dube, a former District Director of the SBA, who insists that Trustmark, Eric Proba

("Proba"), and the Mortgage Broker involved have conspired to defraud the United States

Government. During the course of ordinary discovery in Case No. 03-CV-133564 filed in

the 240th Judicial District Court in Fort Bend County, Texas, ("Fort Bend Lawsuit") a

multitude of criminal acts on the part of Proba surfaced. Certain criminal acts exposed in

the Fort Bend Lawsuit relate directly to Trustmark such as felony Class "A" Bank Fraud,

illegal conversion, embezzlement and other criminal activity. Judge Culver ruled in the

Fort Bend Lawsuit that Mazada and Derrick were two independent separate companies

with dissimilar Officers, Directors and Shareholders. Furthermore Judge Culver entered

an Order to specifically not allow Mazada to pay any expenses for the benefit of Derrick,

Proba or any other entity. This is now a matter of *res judicata.*

7.     Although Trustmark is very familiar, and with full knowledge, in each and

every fact described herein in #6 above, Trustmark, and with conscious indifference to

complying with the law, conspires with Proba for its own self serving benefit. This is

most disturbing in a United States Bankruptcy Court which has the primary obligation to

protect the assets of the "Debtor" and to serve the best interests of the creditors. Trustmark's acts are very contradictory to Mazada's best interests. We will show the Courts that Caplan, by written agreement with Proba, performed a "First Class" job in his duties to "clean-up" yet another pending disaster created by the less than competent hands of Proba. Caplan was able to resolve a pending lawsuit that Lookers Group, L,L,C, ("Lookers") anticipated filing against Proba and Derrick for fraud and other issues. Although initially misled by Proba, Caplan was able to resolve the lease issues with Lookers. This was extremely timely in that Lookers surely would have tied up the property without any income for a lengthily time. Additionally Caplan was able to obtain an Earnest Money Contract in Title with a financially capable party at a sales price for full appraised value.

8.   Caplan's good work was undone by the tortuous interference of Trustmark and the fraudulent acts of Proba. If the Parties had, and were likely to have, performed as agreed in writing, Mazada would have had about $450,000.00 reduction in note balance owed to Trustmark and the SBA. Mazada, furthermore, would not have encumbered the continuing expense of maintaining and funding the expenses of a third party as it relates to the United States Bankruptcy Courts. Trustmark and Proba are clearly guilty of embezzling funds and depleting the assets and the operational viability of Mazada. This Court should force the immediate sale of the Derrick property.

9.   Although it should now be clear that Trustmark has been acting in contempt of this court and has furthermore, conducted itself in acts that are contradictory to criminal code, it, Trustmark, reaches new heights in its egregious criminal acts perpetrated against Caplan in the most malicious unimaginable flagrant conduct.

4

Specifically, we would direct this Court to review to Adversary No. 06-3475 and

Trustmark "Exhibit List of Trustmark National Bank" Exhibit No. 5-"Clarendon America

Insurance Policy Number APX-PK-00058488. Although each page of the entire

document is important, the front page (Exhibit # 5a) and "LOSSPAY (REV 01-01-

2003) Page 1of 1" and entitled "**LOSS PAYABLE CLAUSE ENDORSEMENT**"

(Exhibit # 5b) are resubmitted for purposes of clarity in this Original Answer. In # 5a,

item # 1. NAMED INSUREDAND MAILING ADDRESS:, we will find:

> Lookers Group, LLC DBA Lookers Cabaret
> 345 West Richey Road
> Houston, TX 77090.

> The Named Insured is a Limited Liability Corporation

Although it is crystal clear that Lookers is the Owner of this policy, Trustmark, by fraud,

deceit, and contempt of this Court has successfully convinced this Court that it is

Trustmark is the Owner or the "Insured" of this policy. This act of deliberate

misrepresentation constitutes "Insurance Fraud", it is a felony crime and it is perpetrated

by Trustmark with "Criminal Intent". When we refer to Exhibit # 5b, it is undeniably

written:

> "24. Payment of Loss.

 The Company will pay all adjusted claims within 30 days after presentation and
acceptance of the proof of loss. Loss, if any, shall be adjusted with the insured and shall
be payable to the insured and to the following parties as their interests may appear:


Loc. 1, Bldg. 1
Trustmark National Bank
P.O. Box 1182
Houston, TX 77069"

It is indisputable that the "Loss Payable" shall be made payable to Lookers. The only loss

that may be payable to Trustmark is limited to Trustmark's interest as it <u>may</u> appear. Trustmark falsely, and with criminal intent, with contempt of the Court represents that they (Trustmark) are entitled to all of the insurance proceeds.

10.    Clarendon America Insurance Company ("Clarendon") fulfills all of its customary and ordinary obligations as an insurer and prepares two checks with a detailed listing of what exactly each check is to pay. Once again Trustmark is in contempt of this Court when it submits in its "EXHIBIT LIST" as No. 6 entitled "Jansen International Detailed Listing of Insurance Claim" and intentionally omits to show the Court Caplan Exhibit 21 which is "Jansen International Contents Inventory". This inventory contents list was hand delivered to Ms. Leslie Higgenbotham at the Trustmark Town and Country Office for copying with Ms. Higgenbotham retaining a copy for Trustmark. In furtherance to show this Court the efforts with which Trustmark took to contemptuously deceive this Court, refer to Trustmark Exhibit No.1 entitled "UCC Filing" and is a renewal of the original 1994 filing. It is intentionally only part of the document. The full document is found in Caplan Exhibit 22 which clearly identifies equipment and inventory that Trustmark does have an "interest "in. Caplan asserts that Trustmark intentionally deleted the true list of their interests for at least three reasons. The third reason is because Trustmark knows that it is intentionally fraudulent when submitted by Proba in 1994. Secondly, Trustmark does not want the Courts to compare their interests to precisely what Clarendon was paying for. The primary reason was Trustmark's criminal intent to deceive this Court that the insurance check belonged to Trustmark. The nature of this deliberate and willful deceit is well defined in the "Criminal Code" as insurance fraud and is a serious criminal felony to "grab" insurance funds for items that belong to another

6

independent party.

11.   Trustmark, by malicious, willful, and contemptuous acts with criminal intent, convinced this Court that it was Caplan who was guilty of criminal acts and we are sure that this Court recalls the admonishment given Caplan and the sanctions imposed upon Caplan to pay on what the Court can clearly see now as serious crimes committed by Trustmark. When Trustmark accepted and cashed Caplan's check for approximately $95,000.00, Trustmark completed its gambit by committing the act of "felony theft by fraud".

12.   It should be noted that Trustmark, immediately after their successful fraudulent acts with Caplan, attempted, by "bully" tactics to scare Lookers into paying some of their money to secure peace. Antonio "Tony" Holley came to Trustmark's offices and presented full documentation to Ms. Higgenbotham clearly supporting that Lookers had done nothing wrong by cashing Clarendon's check for items that belonged solely and exclusively to Lookers. Mr. Holley indicates that Trustmark agrees that they (Trustmark) had and never had any claim to Looker's equipment.

13.   Trustmark's success in deceiving this Court and with "Criminal Intent" was a major part of Caplan's "slippery slope" in this Court. So energized and emboldened by their contempt and requirement to have to represent the truth to this Court, Trustmark makes a quantum leap from "theft by fraud" to a continued misrepresentation to the Courts. Trustmark then tells this Court that the insurance proceeds that belong to Derrick now represents the "Cash Collateral" for Mazada. These are two separate and distinct entities in every way except that they are co-borrowers to two certain notes.

14.     Trustmark knows that it has by design, and in contempt of its requirements for the truth, has reduced Caplan's credibility in this Court to zero or less. As such Trustmark, without putting on any real evidence is awarded approximately $85,000.00  in additional sanctions on issues for which it has misrepresented, with criminal intent and lawfully has no real entitlement.

15.     Caplan knows that that this Court has ruled in absence of the truth and in absence of the real facts. His attorney Craig Cowgill is not permitted procedurally to re-argue any issues already ruled on and as such we must respect the Court for forcing all parties to comply with procedural codes governing this Court. Mr. Cowgill admits that he is not adequately versed in criminal law, and as such refers me to a very highly rated Criminal Law Firm who confirms that the acts perpetrated by Trustmark are Criminal! This attorney tells Caplan that "when you are robbed you take this issue to the police. In this case you should go to the F.B.I."

16. Caplan admits that he has in fact taken these issues, mostly limited to Caplan Exhibit # 23, to at least six (6) attorneys and to the following authoritative

agencies:            a) U.S. Marshall
                     b) U.S. Trustee's Office (two people)
                     c) U.S. Attorney (two agents)
                     d) F.B.I.
                     e) Harris County District Attorney

### IV. DEFAMATION, SLANDER AND SLANDER PER SE
### REQUEST FOR PRELIMINARY INJUNCTION
### REQUEST FOR PERMANENT INJUNCTION

17. There has been no slander, slander per se and no defamation for at least three (3) reasons. Firstly, Caplan has represented only the truth, the whole truth and nothing but the truth. The truth is summarized in writing and is attached hereto in Exhibit

8

# 23. Caplan welcomes the challenge to review this attachment line by, word by word and will show this Court that it is in fact entirely truthful. Secondly, each and every lawyer that this letter was revealed to, was for the sole purpose of attempting to engage their legal services in this matter. All communications with each and every one of these lawyers is privileged communication and is exempt from the rules of slander. Third, all communications with any Official and/or Policing Agency is an exception to the slander rule. All of America's policing agencies would be very substantially less effective if witnesses and/or victims were under the threat of slander lawsuits by the criminals.

## V. SUMMARY AND CONCLUSION

18.      "NO COURT OF COMPETENT JURISDICTION SHALL ALLOW ANY PARTY TO BENEFIT FROM THEIR CRIMINAL ACTS." This is the law of the Land and a cornerstone of the Judicial System of the United States of America. United States. Federal Bankruptcy Courts have always been and remain today and every day at the highest level of Competent Jurisdiction. Caplan acknowledges that when he comes to this Court, or any other Court of Law and represents himself pro-se, that in fact he has a "fool for a client". (This Court should know that Caplan did everything in his power without success to engage competent legal representation in this matter, but, as the Court knows, he is without funds to pay the up front fees required by competent Council). Caplan relies on the good sense and justice seeking qualities of this Court to put the issues of Criminal Acts committed in this Court at a higher calling than form and format. This Court should deal harshly with the disrespect that Falick has practiced and his deliberate and continuous prevaricating conduct at a level that should not be tolerated in any Court yet alone this Federal Court of such respectable competent jurisdiction.

9

## VI.   CAPLAN'S COUNTERCLAIM AGAINST TRUSTMARK AND REQUEST FOR PUNITIVE AND EXEMPLARY AND/OR ALL OTHER REMEDIES AT LAW THAT MAY BE AVAILABLE IN BOTH CIVIL AND CRIMINAL ACTIONS THAT THE COURT MAY FIND

19.    Caplan asks that this Court recognize that Trustmark has filed this spurious Complaint not only as an act of malice but in essence asks this Court to participate with them in concealing not only their "bad acts" but more importantly their criminal conduct in the Federal Court System. Their criminal acts are abominable and should be punished severely. Trustmark acted fraudulently, and/or with specific intent to cause substantial injury to Caplan, and/or with conscious indifference to the rights of Caplan. Caplan is entitled to exemplary damages pursuant to Texas Practice and Rem. Sec. 41.008(a).

20.    Additionally, the contemptuous acts of Trustmark amounted to criminal theft at a punishment level of third degree felony or higher and Trustmark's conduct was committed knowingly and intentionally. These criminal acts were committed by Trustmark, or their employees, or Trustmark is criminally responsible as parties to the criminal acts under the provision of Chapter 7, Texas Penal Code. Caplan is entitled to recover exemplary damages against Trustmark without limitation, as provided by Texas Practice and Rem. Sec. 41.008(c).

21. Caplan seeks such exemplary damages as a penalty or by way of punishment. Caplan asks the trier of fact to consider for each

the nature of the wrong;

the character of the conduct involved;

the degree of culpability

the situation and sensibilities of the parties concerned;

the extent to which the conduct offends a public sense of justice and propriety;

the net worth of Trustmark and other wrong doers

## VII.    PRAYER FOR RELIEF

22. For these reasons, Defendant/Counterclaimant Caplan asks the Court to do

the following:

a.    Strike all of Plaintiff Trustmark's pleadings in this Adversary Complaint
NO. 07-03047

b.    Purge all sanctions against Larry Caplan as to Trustmark in this Court.

c.    Order Trustmark deliver to Caplan all funds, or $95,000.00 received from
Caplan as a result of their criminal acts and/or wrong doings in this Court
not later than 2:00pm Wednesday February 21, 2007.

d.    Order Falick deliver to Caplan all legal fees, or $125,000.00 received or
billed in his part of perpetrating criminal acts and/or wrong doings in this
Court not later than 2:00pm Monday February 26, 2007.

e.    Sanction Trustmark to deliver to Caplan not later than Friday February
27, 2007 an amount of at least 100 times the amount of money wrongfully
taken from Caplan.

f.    Sanction Falick to deliver to Caplan not later than April 20, 2007 an
amount of his full mal practice insurance policy limits plus $100,000.00
for his part in wrongful acts perpetrated both against Caplan and this
Court.

g.    All other terms and conditions that this Court may deem necessary in
assuring performance by both Trustmark and Falick.

**DATED; February 19th, 2007**

Respectfully submitted,

**LARRY CAPLAN**

Larry R. Caplan, Pro-Se
5331 Pine Arbor Drive
Houston, Texas 77066
281-580-0165 - telephone
832-202-2544 – facsimile
Pro-se for Larry Caplan

11